UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
HANNAH XIE,

                      Plaintiff,

                v.

NEW YORK CITY DEPARTMENT OF
EDUCATION and UNITED FEDERATION OF
TEACHERS QUEENS OFFICE,

                      Defendants.

**MEMORANDUM & ORDER**
19-CV-4097 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Hannah Xie, proceeding *pro se*, commenced the above-captioned action on July 10, 2019 against Defendants the New York City Department of Education (the "DOE") and the United Federation of Teachers Queens Office (the "UFT"). (Compl., Docket Entry No. 1.) Plaintiff alleges that the DOE failed to hire, terminated, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (*Id.* at 4.)[1] The Court also construes Plaintiff's allegations as asserting a claim against the UFT for breach of the duty of fair representation in violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA"). By Memorandum and Order dated October 17, 2019 (the "October 2019 Decision"), the Court dismissed the Complaint and granted Plaintiff thirty days to file an amended complaint. (Oct. 2019 Decision, Docket Entry No. 4.)

      On November 4, 2019, Plaintiff filed an Amended Complaint. (Am. Compl., Docket Entry No. 5.) For the reasons set forth below, the Court dismisses the Complaint and the

---

[1] Because the Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

Amended Complaint.

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. As set forth in the October 2019 Decision, the DOE hired Plaintiff to work at Cambria Heights Academy ("CHA") as a substitute teacher in 2008 and as an "ESL teacher" in September of 2015.[2] (Oct. 2019 Decision 2.)

In or about October or November of 2015, Ms. Carleton ("Carleton"), one of Plaintiff's colleagues, "showed [Plaintiff] a video [depicting] how badly behaving the students in her . . . class were." (*Id.* at 11.) Plaintiff told Carleton that "New York City teachers are not allowed to take . . . videos in classrooms according to law." (*Id.*) Approximately ten to fourteen days later, CHA's assistant principal asked Plaintiff to write a statement about Carleton's video, but Plaintiff refused. (*Id.*) Plaintiff was subsequently "asked to go to the principal's office and the door was immediately shut behind [her] and [she] was told that [she] would get fired if they put [her refusal] into [her] file." (*Id.*)

In August of 2017, the DOE terminated Plaintiff's employment. (*Id.* at 5.) On an unspecified date, Plaintiff "filed an appeal" of her termination with the UFT, but it "did not help," and on June 29, 2018, the DOE "reconfirmed the discontinuance decision." (*Id.*)

Plaintiff alleges in the Amended Complaint that, as a probationer, pursuant to the "union contract," she "should have [had] a mentor in the first year, should have [had] common planning time for co-teaching performers, and should have [had] a following review for TIP." (Am.

---

[2] Because Plaintiff did not reallege some of the previous allegations in her Amended Complaint and specified that the amendment was in addition to her Complaint, the Court relies on the information alleged in both the Complaint and Amended Complaint.

2

Compl. ¶ 1.) Plaintiff did not receive any of these resources, but she is a "good teacher" and has "verbal and written proofs from other school administrators." (*Id.*)

Plaintiff alleges that "the true reason for [her] discontinuance of employment from [the DOE] is nothing but retaliation based on the abuse of power by the principal Melissa Menake." (*Id.* ¶ 2.) In addition, Plaintiff alleges that she was the subject of discrimination based on "frequent verbal threats," was "purposeful[ly] [given] more difficult work condition[s] (including illegal arrangement), no common planning but same performance requirement, ignoring performance progress (no review for TIP), etc." (*Id.* ¶ 9.)

As to the UFT, Plaintiff alleges that she sought "legal protection" from the UFT in her five visits to the UFT Queens Office and accuses the UFT of "negligence and irresponsibility." (*Id.* ¶¶ 3–4.) Moreover, in the complaint Plaintiff filed with the New York State Department of Human Rights (the "NYSDHR"), annexed to the Complaint, she alleged that, during the hearing in connection with her appeal, the "UFT did not . . . fairly represent [her]," and instead, her UFT advocate advised her to "look for lawyers." (Compl. 22.)

Plaintiff requests "reinstat[ment of] [her] complaint filed [with the NYSDHR] and [the Equal Employment Opportunity Commission]", (2) reinstatement of her employment, and (3) "compensation for [her] loss due to [her] unemployment caused by the unjustifiable discontinuance decision." (Compl. 6.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court is required to dismiss *sua sponte* an *in forma pauperis* action if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Plaintiff fails to state a Title VII claim

Plaintiff fails to state a claim under Title VII for (1) discrimination pursuant to 42 U.S.C. § 2000e–2(a)(1), and (2) retaliation pursuant to 42 U.S.C. § 2000e-(3)(a).

#### i. Title VII discrimination

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII discrimination claims are analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 25 (2d Cir. 2018); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). Under the

framework, a plaintiff must establish a prima facie case of discrimination. *Tillery*, 739 F. App'x at 25. If the plaintiff meets this "minimal" burden, *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 307, 311 (2d Cir. 2015)). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext or otherwise "more likely than not based in whole or in part on discrimination." *Tillery*, 739 F. App'x at 25 (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)).

At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of a *McDonnell Douglas* prima facie case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312; *see also Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted). The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's]

5

discriminatory intent." *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Because Plaintiff fails to allege her race, national origin, color, religion, or gender, and does not allege any facts to connect an adverse employment action to any protected status, she has failed to state a claim under Title VII. *See Tiffany v. Dzwonczyk*, 696 F. App'x 7, 9 (2d Cir. 2017) ("Failure to allege membership in a protected class or a relationship between adverse actions and protected class status warrants dismissal."); *Vega*, 801 F.3d at 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." (citing *Littlejohn*, 795 F.3d at 310)); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 172–73 (2d Cir. 2012) ("Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable under Title VII."). The Court therefore dismisses Plaintiff's Title VII discrimination claim.

### ii. Title VII retaliation

Title VII also prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Title

VII retaliation claims are also "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas*." *Russell v. N.Y. Univ.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)). Under the framework, the plaintiff must first establish "a prima facie case of retaliation." *Id.* (quoting *Hicks*, 593 F.3d at 164). If the plaintiff sustains this initial "de minimis" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Id.* (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage, the allegations need only give "plausible support to the reduced prima facie requirements." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

The Court dismisses Plaintiff's Title VII retaliation claim because she fails to allege that she engaged in any protected activity. *See Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (explaining that Title VII "prohibits an employer from taking 'materially

adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity" (citations omitted)); *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) ("[Title VII] prohibits discrimination by an employer against an employee who 'has opposed any practice made an unlawful employment practice' by Title VII or who has 'participated in any manner in an investigation, proceeding, or hearing' under Title VII." (citations omitted)); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, [and] this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990))).

Accordingly, the Court dismisses Plaintiff's Title VII discrimination and retaliation claims.

### c. Plaintiff fails to state a duty of fair representation claim

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313

(2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

Plaintiff fails to provide any non-conclusory allegations to support a claim for breach of the duty of fair representation. Plaintiff alleges that the UFT "did not help." (Compl. 5.) In addition, Plaintiff alleges that during the hearing in connection with her appeal, "the UFT did not . . . fairly represent [her]," instead, her UFT advocate advised her to "look for lawyers." (*Id.* at 22.) In the October 2019 Decision, the Court found the allegations in the Complaint insufficient to sustain a claim for the duty of fair representation. (*See generally* Oct. 2019 Decision.) In the Amended Complaint, Plaintiff alleges "negligence and irresponsibility from [her] sole legal representative UFT Queens office" and noted that she sought "legal protection" from the UFT in her five visits to the UFT Queens Office. (Am. Compl. ¶¶ 3–4.) These

allegations are insufficient to cure the deficiencies identified in the initial Complaint. (*See generally* Oct. 2019 Decision.) Plaintiff must allege that the UFT's actions were arbitrary, discriminatory, or in bad faith, or allege facts from which this Court could infer such conduct. *See Messina v. 1199 SEIU United Healthcare Workers E.*, 453 F. App'x 25, 27 (2d Cir. 2011) (holding that the duty is not breached "where the union fails to process a meritless grievance, fails to process a grievance due to error in evaluating its merits, engages in mere negligent conduct or errors in judgment, or decides not to arbitrate a grievance." (citations omitted)); *Barr v. United Parcel Serv.*, 868 F.2d 36, 43–44 (2d Cir. 1989) ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.").

Accordingly, the Court dismisses Plaintiff's duty of fair representation claim.

### d. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a second amended complaint within thirty (30) days of this Memorandum and Order. Plaintiff's second amended complaint must identify the protected class to which she belongs, if any, state any circumstances that she believes give rise to an inference of discrimination, and any complaints that she made that might qualify as protected activity. In addition, Plaintiff must set forth any action taken by the UFT that she believes was arbitrary, discriminatory, or taken in bad faith. Plaintiff must include any and all allegations that she wishes to pursue in her second amended complaint, as it will completely replace the original Complaint and her Amended Complaint. The second amended complaint should be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the reasons set forth above, the Court dismisses Plaintiff's Complaint and her Amended Complaint, and grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: January 2, 2020
      Brooklyn, New York

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge