UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

HANNAH XIE,

                       Plaintiff,

           v.

NEW YORK CITY DEPARTMENT OF
EDUCATION and UNITED FEDERATION OF
TEACHERS QUEENS OFFICE,

                       Defendants.

-----------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
19-CV-4097 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Hannah Xie, proceeding *pro se*, commenced the above-captioned action on July 10, 2019 against Defendants New York City Department of Education (the "DOE") and the United Federation of Teachers Queens Office (the "UFT").  (Compl., Docket Entry No. 1.)  Plaintiff alleges that the DOE failed to hire, terminated, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  (*Id.*)  The Court also construes the Complaint as asserting a claim against the UFT for breach of the duty of fair representation in violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA").  By Memorandum and Order dated October 17, 2019 (the "October 2019 Decision"), the Court dismissed the Complaint and granted Plaintiff thirty days to file an amended complaint.  (Oct. 2019 Decision, Docket Entry No. 4.)

      On November 4, 2019, Plaintiff filed an Amended Complaint.  (Am. Compl., Docket Entry No. 5.)  By Memorandum and Order dated January 2, 2020 (the "January 2020 Decision"), the Court dismissed the Amended Complaint and granted Plaintiff thirty days to file a second amended complaint.  (Jan. 2020 Decision, Docket Entry No. 6.)

On January 24, 2020, Plaintiff filed a two-page Second Amended Complaint.  (Second Am. Compl. ("SAC"), Docket Entry No. 7.)  In the SAC, Plaintiff makes the same allegations the Court found deficient in the October 2019 and January 2020 Decisions.  (*See generally* SAC.)  Because as explained below, Plaintiff fails to state a claim, the Court dismisses the action.

## I.  Background

As set forth in the October 2019 Decision, the DOE hired Plaintiff to work at Cambria Heights Academy ("CHA") as a substitute teacher in 2008 and as an "ESL teacher" in September of 2015.  (Oct. 2019 Decision 2.)[1]

In or about October or November of 2015, Ms. Carleton ("Carleton"), one of Plaintiff's colleagues, "showed [Plaintiff] a video [depicting] how badly behaving the students in her . . . class were."  (*Id.* at 11.)  Plaintiff told Carleton that "New York City teachers are not allowed to take . . . videos in classrooms according to law."  (*Id.*)  Approximately ten to fourteen days later, CHA's assistant principal asked Plaintiff to write a statement about Carleton's video, but Plaintiff refused.  (*Id.*)  Plaintiff was subsequently "asked to go to the principal's office and the door was immediately shut" and Plaintiff was told that she "would get fired" if they put her refusal to write a statement in her file.  (*Id.*)

In August of 2017, the DOE terminated Plaintiff's employment.  (*Id.* at 5.)  On an unspecified date, Plaintiff "filed an appeal" of her termination with the UFT, but it "did not help," and on June 29, 2018, the DOE "reconfirmed the discontinuance decision."  (*Id.*)

---

[1]  Plaintiff's two-page SAC appears to rely on the facts set forth in the Complaint and the Amended Complaint.  The Court therefore relies on all three documents.  In addition, because the Complaint, the Amended Complaint, and the SAC are not consecutively paginated, the Court refers to the page numbers assigned to each document by the Electronic Case Filing ("ECF") system.  The Court also assumes the truth of the factual allegations in the Complaint, the Amended Complaint, and the SAC for the purposes of this Memorandum and Order.

As set forth in the Amended Complaint, Plaintiff alleges that, as a probationer, pursuant to the "union contract," she "should have [had] a mentor in the first year, should have [had] common planning time for co-teaching performers, and should have [had] a following review for TIP." (Am. Compl. ¶ 1.) Plaintiff did not receive any of these resources, but is a "good teacher" and has "verbal and written proofs from other school administrators." (*Id.*) Plaintiff alleges that "the true reason for [her] discontinuance of employment" from the DOE "is nothing but retaliation based on the abuse of power by the principal Melissa Menake." (*Id.* ¶ 2.) Plaintiff also alleges that she was the subject of discrimination based on "frequent verbal threats," and was "purposeful[ly] [given] more difficult work condition[s] (including illegal arrangement), no common planning but same performance requirement, ignoring performance progress (no review for TIP), etc." (*Id.* ¶ 9.)

In the SAC, Plaintiff alleges that Defendants discriminated against her and failed to provide her with "common planning for push-in classes, . . . enough room space for ESL students, . . . review for TIP, and . . . mentoring for probation." (SAC ¶ 1.) "These are all Union contract stated, but I got none." (*Id.*) In support of her retaliation claim, Plaintiff alleges that her work performance became "ineffective" because she refused to write a statement for the principal. (*Id.* ¶ 2.)

Plaintiff alleges that she sought "legal protection" from the UFT in her five visits to the UFT Queens Office and accuses the UFT of "negligence and irresponsibility." (Am. Compl. ¶¶ 3–4.) In the Complaint Plaintiff filed with the New York State Department of Human Rights (the "NYSDHR"), attached to the Complaint, she alleged that, during the hearing in connection with her appeal, the "UFT did not . . . fairly represent [her]," and instead, her UFT advocate advised her to "look for lawyers." (Compl. 22.)

In the SAC, Plaintiff makes the same allegations against the UFT as set forth in her prior pleadings, i.e., that she made five visits to the UFT Office and was told to hire a lawyer, and also that the UFT could not "do anything but wait for the hearing for [Plaintiff's] grievance," which "took almost [a] whole year."  (SAC ¶ 3.)

Plaintiff seeks "to overturn the DOE's unjustifiable discontinuance decision, and to compensate [her] financial loss . . . due to this decision."  (*Id.* at 2.)

## II.  Discussion

### a.  Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

> **b.    Plaintiff fails to state a Title VII claim for discrimination or retaliation**

Plaintiff fails to state a claim under Title VII for (1) discrimination pursuant to 42 U.S.C.

§ 2000e-2(a)(1), or (2) retaliation pursuant to 42 U.S.C. § 2000e-(3)(a).

> **i.    Title VII discrimination**

Title VII prohibits an employer from discriminating "against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).   Title VII

discrimination claims are analyzed under the three-stage, burden-shifting framework established

by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Tillery*

*v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 25 (2d Cir. 2018);

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016).  Under the

framework, a plaintiff must establish a prima facie case of discrimination.  *Tillery*, 739 F. App'x

at 25.  If the plaintiff meets this "minimal" burden, *Holcomb v. Iona College*, 521 F.3d 130, 139

(2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the

defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged

conduct, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 307, 311 (2d Cir. 2015)).  If the defendant-employer

articulates such a reason, the burden shifts back to the plaintiff-employee to show that the

defendant-employer's reason was pretext or otherwise "more likely than not based in whole or in

part on discrimination."  *Tillery*, 739 F. App'x at 25 (citing *Aulicino v. N.Y.C. Dep't of Homeless*

*Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)).

At the pleading stage, however, a plaintiff need not prove discrimination or even allege

facts establishing every element of a *McDonnell Douglas* prima facie case.  *Littlejohn*, 795 F.3d

at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))).  Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims.  *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted).  The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's] discriminatory intent."  *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Because Plaintiff again fails to allege her race, national origin, color, religion, or gender, and does not allege any facts to connect an adverse employment action to any protected status, she has failed to state a claim under Title VII.  *See Tiffany v. Dzwonczyk*, 696 F. App'x 7, 9 (2d Cir. 2017) ("Failure to allege membership in a protected class or a relationship between adverse actions and protected class status warrants dismissal."); *Vega*, 801 F.3d at 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of

discrimination." (citing *Littlejohn*, 795 F.3d at 310)); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 172–73 (2d Cir. 2012) ("Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable under Title VII.").[2]  The Court therefore dismisses Plaintiff's Title VII discrimination claim.

### ii.     Title VII retaliation

Title VII also prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-(3)(a).  To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  Title VII retaliation claims are also "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas*."  *Russell v. N.Y. Univ.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  Under the framework, the plaintiff must first establish "a prima facie case of retaliation." *Id.* (quoting *Hicks*, 593 F.3d at 164).  If the plaintiff sustains this initial "de minimis" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164).  "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the

---

[2]  Even if the Court were to assume based on Plaintiff's name and allegations that she is female and Asian, Plaintiff has not alleged that any of Defendants' actions against her were in any way related to her gender or race.  (*See generally* SAC.)  Instead, throughout all three versions of her pleading, Plaintiff alleges that Defendants engaged in the complained-of actions, including her termination, because of her refusal to write a statement about her co-worker Carleton's video of a class.

employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'"  *Id.* (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage, the allegations need only give "plausible support to the reduced prima facie requirements." *Id.*  "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  "'[T]he standard for an 'adverse employment action' in a retaliation claim . . . is not as demanding as it is in a discrimination claim.'  An employer's action can be materially adverse under a retaliation claim 'even if the challenged action does not affect the employee's compensation, terms, conditions, or privileges of employment' and thus would not be materially adverse for purposes of a discrimination claim." *Bowman v. New York State Hous. & Cmty. Renewal*, No. 18-CV-11596, 2020 WL 1233701, at *7 (S.D.N.Y. Mar. 13, 2020) (citations omitted)); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) ("The proper question for a retaliation claim is 'whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination.'"  (first citing *Kessler v. Westchester Cty Dept. of Social Services*, 461 F.3d 199, 209 (E.D.N.Y. Mar. 26, 2020); and then citing *Burlington Northern and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006))).

8

Plaintiff fails to allege that she engaged in any protected activity, and has therefore failed to state a retaliation claim under Title VII.  Plaintiff continues to argue that her failure to write a statement about her co-worker Carleton's video of a class caused her termination, but these facts do not suggest that Plaintiff opposed conduct forbidden by Title VII or otherwise engaged in any protected activity.  *See Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (explaining that Title VII "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity" (citations omitted)).  Moreover, although Plaintiff was being supportive of her co-worker during an apparent investigation into the co-worker's conduct by refusing to write a statement about her co-worker's actions, Plaintiff has not alleged any facts to suggest that her co-worker was engaged in protected activity when she videotaped students who were behaving poorly in a classroom.  *See McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) ("[Title VII] prohibits discrimination by an employer against an employee who 'has opposed any practice made an unlawful employment practice' by Title VII or who has 'participated in any manner in an investigation, proceeding, or hearing' under Title VII." (citations omitted)); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, [and] this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))).

Accordingly, the Court dismisses Plaintiff's Title VII discrimination and retaliation claims for failure to state a claim.

### c.      Plaintiff fails to state a duty of fair representation claim

Plaintiff fails to state a duty of fair representation claim against the UFT.

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (second alteration in original) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory

allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

Plaintiff fails to provide sufficient, non-conclusory allegations against the UFT, and has therefore failed to state a duty of fair representation claim. Plaintiff alleges that at the UFT Office she met with five different people and "was told different things" such as "you should hire a lawyer, you will win this case"; "[y]ou shouldn't be fired because you are not consecutively two years receiving ineffective, your second year overall rating is developing"; and "[w]e can't do anything but wait for the hearing for your grievance." (SAC. ¶ 3.) In the January 2020 Decision, the Court found similar allegations in the Complaint and the Amended Complaint insufficient to sustain a claim for the duty of fair representation. (*See generally* Oct. 2019 Decision; Jan. 2020 Decision.)

In the SAC, Plaintiff further alleges that because the "hearing took almost [a] whole year," the UFT acted in "bad faith." (SAC ¶ 7.) The Court also construes Plaintiff's allegations as alleging that the UFT acted arbitrarily. (*Id.* ¶ 3.) "A union acts in bad faith when it acts with improper intent, purpose, or motive." *Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 24 (2d Cir. 2018) (quoting *Spellacy*, 156 F.3d at 126). "Bad faith acts include "fraud, dishonesty, and other intentionally misleading conduct." *Id.* In addition, "[a] union may breach its duty when its delays in processing a meritorious grievance result in prejudice to the plaintiff, such as foreclosing arbitration." *Id.* at 23. Plaintiff fails to allege facts to suggest that the delay was arbitrary or in bad faith, or any resulting prejudice as a result of the delay. *See id.* at 23 ("Although the delay was excessive, it was not "so far outside a wide range of reasonableness as

to be irrational." (internal quotation marks and citation omitted)).  Despite the alleged delay, Plaintiff concedes that she had a hearing, but argues that the "UFT did not . . . fairly represent [her]," and that instead, her UFT advocate advised her to "look for lawyers."  (Compl. 22)  These allegations are insufficient to state a duty of fair representation claim.

Accordingly, the Court dismisses Plaintiff's duty of fair representation claim.

### III.  Conclusion

For the foregoing reasons, the Court dismisses this action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to close this case and mail a copy of this Memorandum and Order to Plaintiff at the address of record.

Dated: May 29, 2020
        Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge

12